IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SAFE STEP WALK-IN TUB CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. _____ |
| v. ) | JURY DEMAND |
| ) | |
| DANIEL KINNEY ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Safe Step Walk-In Tub Co. ("Safe Step"), for its Complaint against Daniel Kinney ("Defendant"), states as follows:

### INTRODUCTION

Safe Step brings this lawsuit to recover damages from its former National Director of Sales who, while still on Safe Step's payroll, recruited Safe Step's best sales representatives to work for its direct competitor.

In exchange for $1.5 million, one of Safe Step's former distributors agreed, *inter alia*, to terminate its relationship with Safe Step, and to not compete with Safe Step or solicit its sales representatives. In violation of the terms of that agreement, the distributor began a competing business and solicited Defendant for employment.[1]

Despite his fiduciary duties to Safe Step, Defendant threw his lot in with this competitor and began actively working against Safe Step's interests while he was still employed by Safe

---

[1] Plaintiff has instituted proceedings against this distributor in another forum.

Step. Specifically, while drawing a six-figure salary from Safe Step, as well as substantial commissions, bonuses, and benefits, Defendant abused the power and access granted by his position as National Director of Sales in order to recruit Safe Step's best sales representatives for the benefit of Safe Step's competitor. As one of Safe Step's most senior managers, Defendant was supposed to be looking out for Safe Step's interests. Instead, he betrayed his duty of loyalty and sabotaged Safe Step's relationships with its key sales representatives for his own benefit. Safe Step seeks to recover the damages caused by Defendant's wrongful conduct.

## PARTIES

1. Safe Step is, and at all relevant times was, a corporation organized and existing under and pursuant to the laws of the State of Tennessee. Safe Step's principal place of business is located at 402 BNA Drive, Suite 350, Nashville, Tennessee, 37217.

2. Upon information and belief, Defendant is a resident of, and domiciled in, Florida.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between Safe Step and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant, because substantially all of Defendant's wrongful acts and omissions giving rise to this lawsuit occurred and/or caused damage in Tennessee, and because this Court's exercise of personal jurisdiction over Defendant comports with due process.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this dispute occurred in this judicial district.

## FACTS

6. Safe Step is in the business of manufacturing, selling, and installing walk-in bathtubs designed to provide the user (primarily seniors and military veterans) with therapeutic and other benefits.

7. At all relevant times, Defendant was Safe Step's National Director of Sales.

8. As part of its business model, Safe Step contracts with dealers to sell its products. One such dealer was RNG Management Group, LLC, formerly known as Safe Step of Michigan, LLC ("RNG").

9. Between March 2011 and January 2014, Safe Step and RNG enjoyed a business relationship governed by a Dealer/License Agreement whereby RNG was authorized to sell Safe Step products, use Safe Step intellectual property to facilitate such sales, and enjoyed ancillary rights necessary to carry out its sales duties.

10. In 2013, RNG desired to end its business relationship with Safe Step and launch a bathroom and shower remodeling company. On January 17, 2014, Safe Step and RNG entered into a License Termination Agreement, which the parties subsequently modified on February 25, 2105 (collectively, "Termination Agreement").

11. Among other provisions, in exchange for a payment of $1.5 million, RNG agreed not to solicit Safe Step's employees, or to compete with Safe Step until January 1, 2016.

12. In or before June of 2015, the principals of RNG determined to form a direct competitor of Safe Step, America's Best Bath, LLC ("ABB"). ABB has been a direct competitor of Safe Step ever since.

13. On information and belief, in or around June 2015, ABB began soliciting Defendant, who at that time was still employed at Safe Step, for employment at ABB.

14. In addition to its direct solicitations of Defendant, ABB also encouraged, and as demonstrated below convinced, Defendant to solicit Safe Step's best sales representatives for employment at ABB.

15. Beginning in June 2015 and continuing until January 2016, Defendant did in fact solicit key Safe Step sales representatives to become sales representatives for ABB, just as ABB had encouraged him to do. Defendant's disloyal actions were taken while Defendant was still an employee of Safe Step, drawing a $100,000 salary as well as substantial bonuses, commissions, and fringe benefits.

16. For example, in or around July 2015, Defendant invited a number of Safe Step's most successful sales representatives to his house and encouraged them to join him in leaving Safe Step in order to work for ABB. Defendant even solicited and received money from these salespeople to be used for the benefit of ABB.

17. During that same July meeting, Defendant encouraged the sales representatives to keep his plans concerning ABB a secret. Indeed, Defendant told them they should not talk about the plan around other individuals at Safe Step or put communications about the plan into writing. Defendant's requests for secrecy reveal that Defendant knew he was acting for the benefit of Safe Step's competitor in violation of his obligation to be loyal to his employer.

18. After the July meeting, Defendant continued to wrongfully solicit Larry Angelocci, Michael Rumley, Timothy Talley, David Hensdale, and other key Safe Step sales representatives, each of whom subsequently resigned from Safe Step and went to work for ABB in early January of 2016.

19. Ronald Greene, one of the principals of ABB, also participated in some of the wrongful solicitations that took place between July 2015 and January 2016. This was made

4

possible by Defendant, who acted as a conduit between ABB and the Safe Step sales representatives he was helping ABB to wrongfully solicit.

20. Though the aforementioned Safe Step sales representatives left Safe Step and began working for ABB in early January of 2016, Defendant did not actually leave Safe Step to (officially) go work for ABB until late January or early February of 2016. Thus, Defendant continued to draw compensation from Safe Step even after he had completed his recruitment of Safe Step's key sales representatives on behalf of ABB.

21. Defendant also took other actions while still employed by Safe Step that were contrary to the best interests of Safe Step and, instead, for the benefit of ABB. For instance, in 2015 an individual in Texas contacted Defendant about potentially becoming a new sales representative at Safe Step. Instead of hiring that individual for the benefit of Safe Step, Defendant convinced the individual not to seek a position at Safe Step, but instead to seek employment with ABB as a competing sales representative.

22. Thus, Defendant not only wrongfully solicited current sales representatives of Safe Step on behalf of ABB, but also wrongfully diverted potential new sales representatives and sources of revenue away from Safe Step and towards ABB. Defendant took all of these wrongful actions while still employed by Safe Step.

## COUNT 1 – BREACH OF FIDUCIARY DUTY

23. Safe Step restates and re-alleges the allegations contained in the preceding paragraphs as though fully set forth herein.

24. At all relevant times, Defendant owed Safe Step a fiduciary duty of loyalty by virtue of his status as Safe Step's employee. This duty required that Defendant act in Safe Step's best interest and refrain from taking actions that were adverse to Safe Step's business interests.

25. Defendant breached these duties by actively and intentionally soliciting Safe Step's key salespeople to work for ABB, a direct competitor of Safe Step, while he was still employed by Safe Step.

26. Defendant also breached these duties by actively and intentionally diverting potential new sales representatives and sources of revenue away from Safe Step and towards ABB while still employed by Safe Step.

27. Defendant's intentional solicitation of Safe Step sales representatives on behalf of a competitor, as well as his intentional diversion of potential new sales representatives and sources of revenue away from Safe Step and to a competitor, not only went against the best interests of Safe Step, but also furthered the interests of Safe Step's competitor.

28. As a direct and proximate result of Defendant's breaches, Safe Step has suffered damages in an amount to be proven at trial.

### COUNT II- TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

29. Safe Step restates and re-alleges the allegations contained in the preceding paragraphs as though fully set forth herein.

30. Safe Step had legal at-will contractual relationships with its sales representatives including, but not limited to, Larry Angelocci, Michael Rumley, Timothy Talley, and David Hensdale.

31. Safe Step had legitimate business expectancies with potential sales representatives interested in working for Safe Step including, but not limited to, the individual from Texas mentioned above.

32. Defendant had specific knowledge of the relationships between Safe Step and its current and potential sales representatives.

33. Defendant intended to cause the termination of those relationships.

34. Defendant used improper means to cause the termination of those relationships. Specifically, Defendant breached his fiduciary duties to Safe Step in order to cause the termination of those relationships.

35. As the direct and proximate result of Defendant's improper actions, Safe Step has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Safe Step requests the following relief:

1. That a jury be empaneled to try this cause;

2. That the Court award Safe Step a judgment for compensatory damages against Defendant in an amount to be determined at trial;

3. That the Court award Safe Step a judgment for punitive damages against Defendant in an amount to be determined at trial;

4. That Defendant have all compensation – including salary, bonuses, commissions, and the market value of all other benefits – that was earned while he was in breach of his fiduciary duties disgorged and returned to Safe Step;

5. That the Court award Safe Step all attorney's fees, costs, expenses, and disbursements which may be available under law or equity;

6. Such other relief as the Court may deem just and equitable.

Respectfully submitted,


/s/ Beau C. Creson
Joseph F. Welborn, III (#15076)
Beau C. Creson (#32049)
Paige M. Ayres (#34133)
BUTLER SNOW LLP
The Pinnacle at Symphony Place
150 Third Avenue South, Suite 1600
Nashville, Tennessee 37201
(615)651-6700
(615)651-6701 (fax)

*Attorneys for Plaintiff Safe Step Walk-In Tub Co.*

8